UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONALD D. KAPLAN and IAN DOLBY, | ) |
| Plaintiffs, | ) 12 C 5134 |
| v. | ) Judge George M. Marovich |
| HOULIHAN SMITH & CO., INC. a/k/a HOULIHAN SMITH & COMPANY, INC., RICHARD HOULIHAN, ANDREW D. SMITH, CHARLES BOTCHWAY, ANTHONY J. MARSALA, DAVID L. HEALD, and CONSULTING FIDUCIARIES, INC., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Lead plaintiffs, Donald D. Kaplan ("Kaplan") and Ian Dolby ("Dolby") have moved this Court for final approval of a settlement agreement they entered (on behalf of a class) with defendants Houlihan Smith & Co., Inc. a/k/a Houlihan Smith & Company, Inc. ("Houlihan Smith"), Richard Houlihan ("Houlihan"), Andrew D. Smith ("Smith"), Charles Botchway ("Botchway"), Anthony J. Marsala ("Marsala"), David L. Heald ("Heald") and Consulting Fiduciaries, Inc. in order to settle the ERISA claims plaintiffs asserted in this case. The Court has held a fairness hearing and, for the reasons set forth below, now grants final approval of the settlement agreement. Also before the Court is class counsel's motion for attorneys' fees and for reimbursement of expenses from the settlement fund.

## I. Background

The two named plaintiffs, Kaplan and Dolby, were participants in the employee stock ownership plan (the "ESOP") sponsored by their employer, defendant Houlihan Smith, an investment banking firm. The ESOP was established in 2006. As of January 2, 2010, the ESOP owned 278,775 shares of Houlihan Smith.

Plaintiffs allege that in July 2010, Houlihan Smith's Board of Directors decided to split up the company and sell some assets. The individual defendants hired defendant Consulting Fiduciaries, Inc. to represent the interests of the ESOP with respect to the division of the company and the sale of the assets. According to plaintiffs, Consulting Fiduciaries, Inc. failed in their duty, because they allowed asset sales to proceed even though the sales were unfair to ESOP participants. Plaintiffs allege that on November 16, 2010, defendants Botchway and Marsala purchased certain of Houlihan Smith's assets for notes receivable and transferred their equity in Houlihan Smith to the ESOP. On December 14, 2010, an entity owned by Houlihan and Smith purchased certain other Houlihan Smith assets for notes receivable, and Smith transferred his equity to the ESOP. The plaintiffs allege that the individual defendants did not pay enough for those assets, both because the assets were worth more and because the ESOP was left holding 932,875 shares of a now-worthless company.

The parties do not say much about defendants' position(s) on the merits, but they say defendants dispute the allegations. It appears defendants might have argued that Houlihan Smith was headed toward failure in any case (which would mean that the shares of the company would have lost value regardless of the transactions) and that the transactions were designed not to leave

the ESOP with worthless shares but rather to salvage a business that could employ some or all of Houlihan Smith's former employees.

With the help of a mediator, the parties reached an agreement to settle this lawsuit. The settlement agreement calls for one insurance carrier to pay $575,000.00 on behalf of Consulting Fiduciaries, Inc. and Heald and for another insurance carrier to pay $700,000.00 on behalf of Houlihan Smith, Houlihan, Smith, Botchway and Marsala, for a total settlement fund of $1,275,000.00. The money, after fees and expenses, is to be divided among the class members based on their pro rata share of the ESOP on December 31, 2009. Each of the two named plaintiffs is to receive an extra $1,000.00 for his efforts as a named plaintiff.

As was mentioned above, the settlement agreement allows for certain fees and expenses to be deducted from the settlement amount. For example, the parties agreed that the plaintiffs' attorneys could ask the Court for an award of fees of up to 30% of the settlement amount and of reasonable expenses, all to be taken from the settlement amount. Defendants agreed not to challenge plaintiffs' attorneys' fee petition. The settlement agreement was also made contingent upon the approval of an independent fiduciary, who is to be paid $15,000.00 from the settlement amount. The class members are to be paid within 45 days after this Court enters final judgment (or after an appeal, should a notice of appeal be filed).

In exchange, the class members are agreeing to release all defendants from any claims arising from the subject matter of this lawsuit that were or could have been brought in this case.

Now-retired District Judge Nordberg certified a class and granted preliminary approval of the settlement agreement. Judge Nordberg certified a class of "all persons who were participants in the Houlihan Smith & Company, Inc. Employee Stock Ownership Plan ("the ESOP") on

December 31, 2009 and/or beneficiaries of such ESOP participants." The class definition explicitly excludes the settling defendants (and their spouses, heirs, etc.). Judge Nordberg certified the class pursuant to Rule 23(a) and 23(b)(1) and (2). Judge Nordberg also approved the notice to the class members, which notice the parties then sent to the class members.

Once the class was notified, the Court received objections from two individuals, one (Brian Semitekol ("Semitekol")) of which is a class member and the other (Richard C. Johnston ("Johnston")) is not. Johnston did not commence work at Houlihan Smith until January 2, 2010 and, therefore, was not a participant in the ESOP on December 31, 2009. He believes that date was selected arbitrarily. Semitekol was a participant on December 31, 2009, but he thinks the settlement proceeds should be allocated based on the final allocation of shares on December 31, 2010.

On May 5, 2014, the independent fiduciary (who had been hired by the Plan fiduciaries) issued his report. The independent fiduciary concluded "that the settlement is a reasonable and attractive settlement for the Plan and Plan participants/beneficiaries."

## II. Discussion

### A. Final approval of settlement

Once a class is certified, the class claims may not be settled without the approval of the court. Fed.R.Civ.P. 23(e) ("The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval"). A court may approve a settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2). In considering whether a class action settlement is fair, adequate and reasonable, a court "must consider 'the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to the settlement among affected parties, the opinion of competent counsel, and the stage of the

proceedings and the amount of discovery completed at the time of settlement.'" *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)). The most important factor is the strength of the plaintiff's case. *Id.*

Here, the settlement of $1,275,000.00 is fair, reasonable and adequate. Although the parties have not given the Court sufficient factual information to determine plaintiffs' likelihood of success on the merits, it is clear that the parties dispute the merits of the claims. Notwithstanding the dispute, the settlement amount constitutes about 61% of the independently-appraised value of the ESOP shares as of December 31, 2008. (The parties have not provided an appraised value for the shares as of December 31, 2009.) A roughly 60% recovery is reasonable in this case. Two of the defendants are dissolved corporations with no apparent assets. (Indeed, one of the chief allegations in this case was that the shares in the ESOP were worthless because Houlihan Smith sold its assets.) The settlement proceeds are coming from two insurance policies--the same two insurance policies that are funding the defense of this suit, such that plaintiffs face the real possibility that the insurance policy maximums would be reached before they win a judgment. Thus, even if plaintiffs could win more than the settlement amount at trial (and that is by no means clear), they might be digging a dry hole. The settlement amount is fair, reasonable and adequate.

The way the settlement proceeds will be divided among the class members also strikes the court as reasonable. The settlement amount (after fees and expenses) will be divided pro rata, based on the number of shares each class member held in his/her ESOP account on December 31, 2009. The average class member would receive about $13,000.00 (less attorneys' fees and other expenses). The two named plaintiffs will each receive an extra $1,000.00 for their efforts as named plaintiffs, which is reasonable.

Two individuals oppose this settlement. One is a class member, and the other is outside of the class. Although the individual who is not a class member lacks standing to object to a settlement agreement to which he is not a party, the two individuals make essentially the same objection. They believe the proceeds of the settlement should not be allocated based on the ESOP share allocations as of December 31, 2009. Class member Semitekol believes December 31, 2010 would be a better date, because by that date, the ESOP had allocated the additional shares it received as a part of the challenged transactions. The defendants and the named plaintiffs, on the other hand, argue that December 31, 2009 is the appropriate date, because that was the date of the last allocation of ESOP shares before the transactions challenged in this case occurred. The Court agrees that December 31, 2009 is a reasonable date to choose for allocating the settlement proceeds. It is those shares that lost value when the challenged transactions occurred. The shares that were added in December 2010 did not lose value, because, as plaintiffs allege in their complaint, those shares were already worthless on account of the fact that Houlihan Smith had already sold its assets. The parties' choice of December 31, 2009 is reasonable. The objections are overruled.

Because the settlement is fair, reasonable and adequate, the Court hereby approves the settlement.

### B. Attorneys' fees and expenses

Next, plaintiffs have filed a motion for attorneys' fees and expenses. They seek attorneys' fees of 30% of the settlement amount, i.e., $382,500.00. They also seek expenses in the amount of $54,261.75.

### 1. Attorneys' fees

Rule 23(h) of the Federal Rules of Civil Procedure allows a court to award reasonable attorneys' fees. Fed.R.Civ.P. 23(h). Such a payment from the settlement fund is "'based on the

equitable notion that those who have benefited from litigation should share in its costs.'" *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) (quoting *Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)).

Here, plaintiffs' attorneys seek 30% of the settlement amount. This Court's task is to consider whether this is consistent with a hypothetical *ex ante* bargain for the attorneys' work on this case. *Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) (When the attorneys' fees are coming from the settlement fund, a court "must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys."). Plaintiffs' attorneys did not reach an agreement with their clients at the outset, but the Seventh Circuit has recognized that the market rate for ERISA class actions is a contingency fee between 25% and 33% of the settlement (or award). *Williams*, 658 F.3d at 636. Thus, the 30% plaintiffs' attorneys request is well within the range of market prices. The parties have given the Court no reason to think this case is one that would be priced at a rate other than the usual market rate.

Plaintiffs' attorneys also argue that 30% is reasonable, because it is less than the amount they would receive on a lodestar basis, i.e., if they were paid for their time at their hourly rates. This argument is absurd. Most of the hours were "billed" at a rate of $725 per hour, but plaintiffs' counsel has provided no evidence any plaintiff has ever or would ever agree to pay that rate (or any of the other hourly rates plaintiffs' lawyers claim as their rates). No rational lead class action plaintiff would agree to pay such an hourly rate in a case where he stood to gain so little, which is precisely why class action lawyers take cases on a contingency basis. Nonetheless, the rate of 30% is reasonable.

The Court approves payment to the plaintiffs' attorneys in the amount of $382,500.00 for fees.

### 2. Expenses

Next, the Court considers the expenses for which plaintiffs' attorneys seek reimbursement.

The firm of Lewis, Feinberg, Lee, Renaker & Jackson, P.C. has provided a six-page itemized list (including dates, amounts and descriptions) of the expenses it incurred in connection with this case. The list includes photo-copying costs, Pro Hoc Vice Admission fees, overnight shipping fees, travel and meal expenses, deposition transcript costs and mediation fees. The Court has carefully reviewed the list of expenses and concludes that they are expenses for which a paying client would reimburse its lawyer. *See In re: Synthroid Mkg Lit'n*, 264 F.3d 712, 722 (7th Cir. 2001) (explaining the appropriateness of considering what the private market would bear in determining whether litigation expenses are reasonable). Accordingly, the Court awards expenses in the amount of $52,078.70 to Lewis, Feinberg, Lee, Renaker & Jackson, P.C.

Next, the firm of Outten & Golden, LLP seeks reimbursement of expenses in the amount of $2,183.75. Specifically, Outten & Golden, LLP requests $350.00 to reimburse it for the filing fee. The Court grants that expense. Outten & Golden, LLP also requests reimbursement for expenses for service of process. The Court awards those expenses as well. Thus, the Court awards Outten & Golden, LLP expenses in the amount of $2,183.75.

### III. Conclusion

For the reasons set forth above, the Court hereby grants final approval of the settlement. The Court approves an incentive award of $1,000.00 each to named plaintiffs Kaplan and Dolby. The Court approves payment of $15,000.00 from the settlement fund to the independent fiduciary Nicholas L. Saakvitne.

The Court grants plaintiffs' motion for attorneys' fees. The Court approves an award of attorneys' fees in the amount of $382,500.00 from the settlement fund. The Court approves an

award of $52,078.70 from the settlement fund to Lewis, Feinberg, Lee, Renaker & Jackson, P.C. as reimbursement for expenses. The Court approves an award of $2,183.75 from the settlement fund to Outten & Golden, LLP for reimbursement of expenses.

Case dismissed with prejudice.

ENTER:

_George M. Marovich_
George M. Marovich
United States District Judge

DATED: June 20, 2014